**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CALIFORNIA PROTON TREATMENT CENTER, LLC,[1] | Case No. 17-10477 (LSS) |
| Debtor. | |
| CALIFORNIA PROTON TREATMENT CENTER, LLC, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 17-_____ |
| SCRIPPS CLINIC MEDICAL GROUP, INC. | |
| Defendant. | |

## COMPLAINT FOR DECLARATORY AND RELATED RELIEF

Plaintiff California Proton Treatment Center, LLC, as a debtor and debtor in possession in the above-captioned chapter 11 case (the "***Debtor***"), complains of Defendant Scripps Clinic Medical Group, Inc. ("***Scripps***") as follows:

## I.
## INTRODUCTION

1.      The Debtor brings this adversary proceeding to resolve an actual controversy potentially impairing the value of the Debtor's principal asset—the real and personal property comprising a proton radiation treatment center located at 9730 Summers Ridge Road, San Diego, California 92121 (the "***Facility***").  Cancer patients receive proton radiation treatment at the Facility, which offers five treatment rooms with pencil scanning technology, as well as advanced

---

[1]      Pursuant to 11 U.S.C. § 342(c)(1), the last four digits of the Debtor's federal tax identification number are: 9073.  The location of the Debtor's place of business and its address for notice purposes is 9730 Summers Ridge Rd., San Diego, CA 92121, Attn: Wilson Williams, Manager.

1

imaging services.  The Debtor constructed and equipped the Facility, and is responsible for the ongoing maintenance of the property and equipment.

2.      Under agreements with the Debtor, Scripps ████████████████████████ ████████████████████████████████. In particular, Scripps ████████████ ████████████████████████████████. Scripps is also responsible for ████████████████████████████, and is otherwise obligated to ████████████ ████████████.

3.      The agreements provide for ████████████████████████████████ ████████████████████████████████. The agreements also provide the Debtor with ████████████████████████████████████████, including a right to ████████████████████████.

4.      The operating performance of the Facility has been poor, and gross revenue has never reached the levels anticipated in the initial budget developed by Scripps.  The Facility has performed so poorly relative to the budget as to raise serious questions as to the sufficiency of Scripps' diligence and planning, as well as the quality of Scripps' management of the Facility and capabilities or willingness to generate patient flow even reasonably proximate to the patient flow included in the initial budget.  By way of example, the initial budget projected ████████████ ████████████████████████. In actuality, the actual number of patients treated by Scripps totaled 404 in 2015, 464 in 2016, and 107 through March 10, 2017.

5.      The Facility has experienced both revenue shortfalls and operating losses.  The Debtor has relied heavily upon the liquidity supplied by its lenders and vendors in order to meet its operating expenses.  But there has been insufficient free cash flow to permit the Debtor to make all of the necessary payments to support operations or any repayment of its obligations to

57870866.1

its lenders.  The failure to meet the established operational and performance thresholds provides the Debtor with the right and power to ███████████████████ Scripps, consistent with the terms and conditions set forth in the agreements.

6.      The Debtor's agreement with Scripps has become burdensome and disadvantageous, owing in in large part to the Facility's lackluster performance, which is Scripps' responsibility.  The Debtor therefore proposes to explore either a sale or a standalone reorganization of its operations—in either case free and clear of the relationship with Scripps. These plans are impaired and potentially jeopardized by Scripps' stated position that it is entitled to the continued use and occupancy of the Facility—regardless of the negative impact of this position on the Debtor's creditors, equity holders, and other stakeholders.  To maximize and realize value for its stakeholders, the Debtor needs to pursue either a sale transaction or a standalone reorganization that will permit the Facility to be operated free and clear of the money-losing economic parameters imposed upon it by the Scripps relationship.  Scripps appears determined to oppose these efforts, and to insist that the Facility remain subject to the operational and financial restrictions of the Scripps relationship—regardless of the ensuing loss of value to the Debtor and its stakeholders.

7.      The Debtor files this adversary proceeding to resolve these actual controversies with Scripps regarding the nature of Scripps' interest in the Facility.   The Debtor seeks declaratory relief to establish that (i) Scripps' rights are purely contractual, and do not amount to an actual property interest in the Facility entitling Scripps to any right under 11 U.S.C. § 365(h), and (ii) the Debtor is entitled and has the requisite authority under the applicable agreements to ██████████ Scripps' █████████████████████████.

8.     The relief sought in this Complaint will permit the Debtor to maximize value for its stakeholders—whether through a sale or a reorganization.  Ultimately, the resolution of the issues pleaded in this Complaint will facilitate the successful resolution of this case, and the Debtor's emergence from Chapter 11.

## II.
## JURISDICTION AND VENUE

9.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b).

10.     Pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), the Debtor consents to entry of final orders or judgments by the Court.  Further, pursuant to Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***"), the Debtor consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

11.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

12.     The relief requested in this adversary complaint (the "***Complaint***") is based upon 11 U.S.C. §§ 105(a), 363, and 365; 28 U.S.C. §§ 2201 and 2202; and Bankruptcy Rule 7001.

## III.
## PARTIES

13.     *Plaintiff* – Debtor is a Delaware limited liability company that owns and operates the approximately 100,000 square-foot proton therapy Facility located at 9730 Summers Ridge Road in San Diego, California 92121.  Debtor may be served with pleadings and process in this adversary proceeding through the undersigned counsel.

4

14.     *Defendant* – Scripps is a California professional medical corporation that provides healthcare services at the Facility under an agreement with the Debtor, described more fully below.  Scripps may be served with summons pursuant to Bankruptcy Rule 7004 at 1066 N. Torrey Pines Road, 207 W, La Jolla, California 92037 (Attn: Robert B. Sarnoff, President), or in accordance with the applicable Bankruptcy and Federal Rules of Civil Procedure.

## IV.
## BACKGROUND

**A.     Procedural History**

15.     On March 1, 2017 (the "***Petition Date***"), the Debtor commenced the underlying case (the "***Chapter 11 Case***") by filing a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.  The Debtor is operating its business and managing its property as a debtor in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

16.     No request for the appointment of a trustee or an examiner has been made in this Chapter 11 Case and, as of the date of this Complaint, no committee has been appointed or designated.

**B.     The Facility**

17.     The Facility is located on an approximately 9.356 acre parcel of land in San Diego, California with the following real property description:

> Parcel 2 of Parcel Map No. 20772, in the City of San Diego, County of San Diego, State of California, filed in the Office of the County Recorder of San Diego County, April 30, 2010 as Document No. 2010-0217240 of Official Records.

18.     The Facility consists of five rooms—two fixed-beam rooms and three gantry rooms—where patients are treated with proton therapy.

19.     The Facility's proton therapy operations are predominantly used to treat cancer patients.  The proton therapy equipment and related technology (the "***Proton Equipment***")

located at and within the Facility are advanced and allow for minimally invasive treatment of cancerous tumors with precision.

20.     The Debtor is the owner of the Facility and all Proton Equipment located at and within the Facility.

21.     The Facility and Proton Equipment are subject to liens and security interests in favor of ORIX Capital Markets, LLC, a Delaware limited liability company ("***ORIX***"), as agent for the benefit of ORIX, Varian Medical Systems International AG, a Swiss Corporation ("***Varian***"), and JP Morgan Chase Bank, N.A., a national banking association ("***JP Morgan***" and collectively with ORIX and Varian, the "***Lenders***"), which liens and security interests secure the amounts and obligations owing to the Lenders under a Loan and Security Agreement dated as of September 30, 2011, as amended, and all related loan documents (collectively, the "***Loan Agreement***").

22.     In addition to being the seller of the Proton Equipment (the "***Proton Equipment Seller***"), an affiliate of Varian, Varian Medical Systems, Inc., participated in the extension of credit that permitted the Debtor to purchase this equipment (the "***Proton Equipment Financing***").  To secure its obligations to repay the Proton Equipment Financing, the Debtor granted a second priority security interest in the Proton Equipment to the Proton Equipment Seller, which security interest is junior to the security interests of ORIX, as agent, in the Proton Equipment.

**C.      The Services Agreement and Scripps' Provision of Services at the Facility**

23.     On June 11, 2010, the Debtor and Scripps entered into an agreement titled "Lease and Management Services Agreement" (the "***Services Agreement***"), a copy of which is attached as **Exhibit A** and incorporated by reference.

6

24.    The Services Agreement provides a detailed set of terms governing the respective rights and responsibilities of the Debtor and Scripps in connection with the operation of the Facility.

25.    The Services Agreement denominates the Debtor as the "██████" and Scripps as the "██████," but, notably, not as "lessor" and "lessee" or "landlord" and "tenant."  *See* Ex. A. at p.1.

26.    The Services Agreement requires the Debtor, as the ██████, to provide certain ██████████,[2]  which include, *inter alia*: (i) ████████████████████ ████████████████████████████████████████ ████████████████████████████ (ii) ████████████ ████████████████████████████████████████ ████████████████████ (iii) ████████████████ ████████████████████████████████████████ ██████ (iv) ████████████████████████████ ████████████████ (v) ████████████████████ ████████ and, (vi) ██████████████████████████ ██████████████. *See, e.g.*, Ex. A at §§ 9.1, 9.4.

27.    The Services Agreement requires Scripps, as the ██████, to supply ██████ ████████████████████, and to assure the ██████████████████ ██████████████. In particular, Scripps is responsible for:  (i) ██████████████ ████████████████████████████████████████ ████████████████████████████████████████

---

[2]     Capitalized terms used but not defined herein shall have the same definitions used in the Services Agreement.

57870866.1

███████████ (ii) ███████████████████████████████

██████████████████████████████████████████████

(iii) ████████████████████████████████████████

██████████████████████████████████████████████

███████████████ (iv) ████████████████████████

█████████████████████ (v) ██████████████████████

███████████████ (vi) ████████████████████████

██████████████████████████████████████████████

██████████████████████ and (vii) ████████████████

██████████████████████████████████████████████

███████████████████████████████ *See, e.g.*, Ex. A at

§ 8.1.1–.7.

28.    The Services Agreement further provides for the Debtor to receive a

"████████████," defined as ██████████████████████████

██████████████████████████████████████████████

███████████████████████████████ subject to

certain additional terms (the "***Management Fee***"). *Id.* at p.8.

29.    The Services Agreement establishes ████████████████████

██████████████████████████████, though, as discussed further

below, ████████████████████████████████████████

███████. *Id.* at §§ 4.3–4.5; *see generally* Ex. D.  Scripps causes ████████

██████████████████████████████████████████████

███████████████. *Id.* at § 4.3.

30.    The Services Agreement requires ███████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████. *Id.*

31.    If ████████████████████████████████████████ ████████████████████████████████, then the Debtor ████████████ ████████████████████████████████████████████████████ ████. *Id.* at § 4.4.

32.    If there are ██████████████████████████████████ ████████████████████████████████████, then the Debtor ████████████ ██████████████████████. *Id.*

33.    The Debtor is responsible for ████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████████. *Id.* at p.5 (defining "████████████ ████████"). The Services Agreement makes the Debtor ████████████████ ████████████████████████████████. To the extent there are insufficient ████████████████████████████ for this purpose, the Debtor must ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████ *Id.* at § 5.4.

34.    The net effect of these provisions is to assure Scripps █████████████████████ ███████████████████████████████, as well as a ██████████████████████████████ ████████, before the Debtor obtains █████████████████████████████████████ ████████.

35.    The Debtor therefore bears the full risk of inadequate or declining performance by the Facility, notwithstanding that Scripps ██████████████████████████████. To the extent the Facility does not achieve its ████████████████████, it is the Debtor's ████████ ██████████████████████████████████████. By contrast, Scripps recovers its █████ ████████████████████████████████████████████████.

36.    The Services Agreement contains a provision purporting to █████████████████ ████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████. *Id.* at §§ 3.1–3.2.

37.    The Services Agreement does not provide for the ███████████████████████████ ████████████████████████████████████████████████████. *Id*. at § 4.1.

38.    The ████████████████ does not fully compensate the Debtor for the █████████ ████████████████████████████████████████████████████████████████████████████.

39.    The ████████████████ certainly does not amount to *any* independent consideration for the ████████████████████████████, let alone remotely approximate fair market value for such ████████████████████.

40.    While the Services Agreement is denominated "Lease and Management Services Agreement," the "lease" is unsupported by independent consideration, entirely derivative of and, at best, incidental to the management and services agreements between the parties.

57870866.1

41.     The Services Agreement purports to limit the Debtor's right to 

▇▇▇▇▇▇▇▇, and also purports to grant Scripps ▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇. *Id.* at §§ 17.1–17.2.  The Services Agreement also

purports to grant Scripps the right, upon ▇▇▇▇▇▇▇, to extract ▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇     *Id.* at § 17.3.

42.     The ▇▇▇▇▇▇ does not amount to any independent consideration for the

▇▇▇▇▇▇▇▇▇▇▇ set forth in Paragraph 41 of this Complaint (the "***Purported***

***Transfer Restrictions***"), nor does it compensate the Debtor for the potential reduction in the

Facility's value created by the Purported Transfer Restrictions.

**D.      The Ground Lease and Ground Sublease**

43.     On or about September 30, 2011, in conjunction with the Loan Agreements, the

Debtor executed and delivered a Ground Lease (the "***Ground Lease***") in favor of ORIX Proton

San Diego, LLC, a Delaware limited liability company affiliated with the Lenders ("***ORIX San***

***Diego***").  The Ground Lease is attached as **Exhibit B**, and incorporated by reference.

44.     Under the Ground Lease, the Debtor leased the real and personal property

comprising the Facility to ORIX San Diego for a term of thirty-four (34) years and three hundred

sixty-four (364) days.  *See* Ex. B at §§ 1.1, 2.1.

45.     Also under the Ground Lease, ORIX San Diego agreed to pay annual ground rent

to the Debtor of $1.00.  *See id.* at § 3.1.

46.     On or about September 30, 2011, in conjunction with the Loan Agreements,

ORIX San Diego executed and delivered a Ground Sublease (the "***Ground Sublease***") in favor

of the Debtor.   The Ground Sublease is attached as **Exhibit C**, and incorporated by reference.

47.     Under the Ground Sublease, ORIX San Diego subleased the real and personal property comprising the Facility to the Debtor for a term of thirty-four (34) years and three hundred sixty-four (364) days.  *See* Ex. C at §§ 1.1, 2.1.

48.     Also under the Ground Sublease, the Debtor agreed to pay annual ground rent to ORIX San Diego of $1.00.  *See id.* at § 3.1.  And the Debtor also agreed to pay ORIX San Diego priority ground rent (the "***Priority Ground Rent***") calculated as 10% of the gross revenue generated at the Facility.  *Id.* at §§ 3.1–3.2.

49.     The Debtor further agreed to reconvey the Facility to ORIX San Diego at the conclusion of the Ground Sublease Term.  *See id.* at § 4.1.  In turn, ORIX San Diego agreed to reconvey the Facility to the Debtor at the conclusion of the Ground Lease Term.  *See* Ex. B at § 4.1.

50.     The Debtor entered into the Ground Lease and the Ground Sublease in conjunction with its Loan Agreement, and as an integral part of the economic terms by which the Lenders extended credit to the Debtor.

**E.     The Multi-Party Agreement**

51.     On September 30, 2011, the Debtor, Scripps, ORIX (as administrative agent for the Lenders), and ORIX San Diego entered into a Multi-Party Agreement (the "***Multi-Party Agreement***").  The Multi-Party Agreement is attached as **Exhibit D**, and incorporated by reference.

52.     Under the Multi-Party Agreement, the parties agreed that Scripps' ███████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

12

████████████████████████████████████████████████████████████

███████████████████████████████ *See* Ex. D at § 1.

53.     Under this provision, the parties agreed that Scripps' █████████████████

██████████████████████████.

54.     Assuming without conceding that Scripps holds a leasehold interest, that leasehold is, at most, in the nature of a sub-sublease.

55.     Also under the Multi-Party Agreement and related agreements, the parties

████████████████████████████████████████████████████████████

██████████████████████████. *See* Ex. D at § 9(a).   Under this revised ███████

████████████████████ would be remitted in the following order: (i) ███████████████

█████████████████████████████ (ii) █████████████████████

████████████████████████████████████████████████████████████

██████████████ (iii) ████████████████████████████████

████████████████████████ (iv) ████████████████████

████████████████████████████████████████████████████████████

███████ (v) █████████████████████████████████████████

███████████████ and, (vi) ████████████████████████████

██████████████████. *Id.*

56.     The net effect of these modifications to the ███████████████ was to subordinate Scripps' ████████████████████████████████—to all payments and other obligations owed to the Lenders under the loan documents (the "***Loan Obligations***")—although, due to the Facility's poor performance as noted below, there was no practical effect resulting from these modifications.   At the same time, the parties agreed that, ████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████.

57.     Following these changes to the ████████████, Scripps continued to have minimal to nonexistent financial risk in connection with ██████████████—owing to the fact that Scripps' ██████████████████████████████████.

58.     While the new ███████ did permit the ███████████████████████ █████████████████████████████, Scripps was entitled to receive its ████████ ████—in the form of the █████████████—before the Debtor received ██████████ ████████████████████.   While Scripps' █████████ was therefore placed at greater risk, the ██████████████████████████████ continued to be ██████ ████████████████████.

59.     Ultimately, the Facility's operating performance was so disappointing that *no revenues have been available to pay any of the Loan Obligations, the* ████████████████, *or the* █████████████████.

60.     The Multi-Party Agreement relegated Scripps to, at best, the status of a sub-sublessee.   However, the Multi-Party Agreement did not remedy the complete absence of *independent* consideration for the purported ████████████████████████████ supposedly granted to Scripps in the Services Agreement.

## E.     Performance Declines under the Services Agreement

61.     Prior to each Term Year of the Services Agreement, Scripps is required to provide ████████████████ that details, *inter alia*:

- ██████████████████████████████████;

- ████████████████████████████████████;

- ███████████████████████████████████████████;
- ███████████; and
- ████████████████████████████.

Ex. A at §§ 24.2.1–.5.  The Services Agreement further provided that Scripps ██████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████ *Id.* at § 24.3.2.

62.    The Services Agreement identifies certain specified ██████████████ that entitle the Debtor to ████████████████████████████.

63.    One such ██████████████, called a ████████████████, is tied to the Facility's ████████████████████.  *Id.* at § 25.1.  Section 25.1 provides, in relevant part, that: "████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████ *Id.*

64.    By providing a ██████████████ in the event of ████████████ ████████████████, the Services Agreement assured the Debtor that it would not be compelled to continue indefinitely in a money-losing relationship with Scripps.  Rather, in the event of ████████████████████████, the Debtor would be permitted to e████ ████████████████, and to free itself from continued operating losses.  That is precisely the state of affairs that has come to pass between the parties.

65.    A ██████████████████ occurred in 2015, which Scripps did not properly cure in 2016, and therefore, ███████████████, the Debtor is entitled to ████ ████████████. *See id.* at § 25.3.

66.    No █████████████ occurred during 2015 (or ever).

67.    Scripps' ████████████████ has impaired the Debtor's ability to fulfill its financial obligations to the Lenders, which in turn has caused the Debtor to seek bankruptcy protection by filing the underlying Chapter 11 Case.

**F.    The Actual Controversy as to the Nature of Scripps' Interest in the Facility**

68.    The Debtor has engaged in good faith negotiations with Scripps, in an effort to modify the Services Agreement so as to make it less financially harmful to the Debtor and its stakeholders.  Those negotiations have not been successful.

69.    In the course of these negotiations, Scripps has invoked its purported ████████ in the Facility, as well as the Purported Transfer Restrictions.  Scripps has taken the position that it holds ongoing rights in the real and personal property comprising the Facility, and that these rights cannot be extinguished or modified without Scripps' consent.  Scripps has also taken the position that it is entitled to a "buyout" payment in connection with any sale of the Facility, or restructuring of the obligations owing by the Debtor in connection with the construction, financing, and operation of the Facility.

70.    For its part, the Debtor asserts that Scripps' interests are entirely contractual in nature, and that Scripps does not hold property rights in the Facility—other than its ███████ ████████████████████████████████ ███████████████. *See* Ex. A at § 5.8.  The Debtor further asserts that the Purported Transfer Restrictions are unenforceable in this Chapter 11 Case.

57870866.1

71. Consequently, there is a present and actual controversy between the Debtor and Scripps as to the nature and enforceability of Scripps' claimed rights in the Facility. There is likewise a present and actual controversy as to whether the Services Agreement—the agreement from which Scripps derives its asserted rights—is subject to termination. It is important for this Court to declare the rights of the parties relative to these controversies, so that the scope and extent of the property contained in the Debtor's bankruptcy estate may be appropriately determined.

72. These present and actual controversies, if not timely resolved, will impair the value of the Facility, and substantially complicate both a sale process and a standalone reorganization, to the detriment of the Debtor and its stakeholders.

## V.
## CLAIMS FOR RELIEF

**COUNT 1 – *Declaratory Relief – Scripps Does Not Hold Either a Property Interest in the Facility Under 11 U.S.C. §363(e) and (f) or a Lease Under 11 U.S.C. § 365(h)***

73. The Debtor repeats and realleges the allegations contained in Paragraphs 1–72 of this Complaint as if fully set forth herein.

74. Scripps' rights under the Services Agreement and the Multi-Party Agreement are contractual in nature.

75. Scripps' rights to ███████████████████████ are likewise contractual in nature, and do not amount to a property interest in the Facility.

76. Scripps' use and operation of the Facility is entirely incidental to the contractual undertakings of the parties under the Services Agreement and the Multi-Party Agreement.

77. Scripps did not provide any independent consideration for its use and occupancy of the Facility.

78. Scripps did not provide market value for its use and occupancy of the Facility.

17

79.     Scripps did not provide any independent consideration for the Purported Transfer Restrictions.

80.     Scripps did not provide market value for the Purported Transfer Restrictions.

81.     Scripps' assertion of a property interest in the Facility is without a sufficient legal and economic basis, is asserted for tactical reasons, and is impairing the value of the Facility to the detriment of the Debtor, its bankruptcy estate, and its stakeholders.

82.     Scripps' assertion of a property interest in the Facility is jeopardizing the Debtor's ability to accomplish a sale of its assets or a restructuring of its obligations, to the detriment of the Debtor, its bankruptcy estate, and its stakeholders.

83.     Accordingly, the Debtor is entitled to a declaratory judgment under Count 1 that (i) Scripps does not hold a property interest in the Facility within the meaning of 11 U.S.C. §§ 363(e) or (f), and (ii) the Purported Transfer Restrictions are unenforceable.  The Debtor is also entitled to a declaratory judgment that Scripps does not hold a leasehold interest in the Facility, and is therefore not entitled to invoke the rights set forth in 11 U.S.C. § 365(h) in the event that the Debtor rejects the Services Agreement in the course of this Chapter 11 Case.

**COUNT 2 – *Declaratory Relief – The Services Agreement is a Sub-Sublease at Most and is Therefore Not a Lease Under 11 U.S.C. § 365(h)***

84.     The Debtor repeats and realleges the allegations contained in Paragraphs 1–83 of this Complaint as if fully set forth herein.

85.     In addition and in the alternative to the allegations set forth in Count 1, Scripps does not have a leasehold interest entitled to protection under 11 U.S.C. § 365(h) because, at most, Scripps holds a sub-sublease in the Facility.

86.     Under the express terms of the Multi-Party Agreement, Scripps ███████████ ██████████████████████████████████████████, and that Scripps' ███████████

██████████████████████████████████████████████████████

████████████████████████████████.

87.     In making these acknowledgements and agreements, Scripps has conclusively admitted it can be no more than a sub-sublessee of the Facility.

88.      The relationship between the Debtor and Scripps is therefore, at most, one of sub-sublessor and sub-sublessee.

89.     By its plain terms, 11 U.S.C. § 365(h) only applies to an "unexpired *lease* of real property."  A lease and a sublease are not the same, and 11 U.S.C. § 365(h) makes no mention of subleases or sub-subleases.

90.     Furthermore, by its plain terms, 11 U.S.C. § 365(h) only applies to unexpired leases "under which the debtor is the *lessor*."  A lessor and a sublessor are not the same, and 11 U.S.C. § 365(h) makes no mention of sublessors or sub-sublessors.

91.     Sub-sublessees like Scripps are not entitled to the rights that 11 U.S.C. § 365(h) provides.

92.     The Debtor has the right and power, pursuant to 11 U.S.C. § 365, to seek bankruptcy court approval for the rejection of the Ground Lease, the Ground Sublease or both.

93.     If this Court approves the Debtor's rejection of either or both of the Ground Lease or the Ground Sublease, Scripps will forfeit any and all right to ████████████████████ ████████████████████████████.

94.     Scripps' ███████████████████████ is completely dependent upon its contractual rights under the Services Agreement, as well as the Debtor's leasehold rights in the Facility.  If the Debtor's leasehold rights in the Facility are extinguished, Scripps will have no interest in the Facility whatsoever.

95.     Accordingly, the Debtor is entitled to a declaratory judgment under Count 2 that Scripps does not hold a leasehold or other property interest in the Facility, and is therefore not entitled to invoke the rights set forth in 11 U.S.C. § 365(h) in the event that the Debtor rejects any or all of the Services Agreement, the Ground Lease, and the Ground Sublease in the course of this Chapter 11 Case.

**COUNT 3 –** *Declaratory Relief – Rights Under the Services Agreement do Not Extend to the Proton Equipment and Other Personal Property Following Rejection*

96.     The Debtor repeats and realleges the allegations contained in Paragraphs 1–95  of this Complaint as if fully set forth herein.

97.     In addition and in the alternative to the allegations set forth in Counts 1 and 2, following any rejection of the Services Agreement, Scripps is not entitled to invoke 11 U.S.C. § 365(h) with respect to the Proton Equipment and other personal property located at the Facility. The Debtor does not concede, and affirmatively disputes, that Scripps has any rights under 11 U.S.C. § 365(h) at all.  But assuming without conceding that 11 U.S.C. § 365(h) is applicable, the statute does not grant *any* rights to Scripps in connection with the Proton Equipment and personal property.

98.     11 U.S.C. § 365(h) grants a continued right of possession with respect to lease rights "that are in or appurtenant to the real property for the balance of the term of such lease. . . ." 11 U.S.C. § 365(h).

99.     The Proton Equipment is the property of the Debtor, was acquired and financed by the Debtor, and, putting aside contractual obligations, can be removed by the Debtor and transferred to another location.

100.     Because the rights to the Proton Equipment and other personal property located at the Facility are not appurtenant to the real property or the Facility covered by the Services

Agreement, Scripps is not entitled to "any right of use, possession, quiet enjoyment, subletting, assignment, or hypothecation" under 11 U.S.C. § 365(h)(1)(A) following any rejection of the Services Agreement.

101.    Following any rejection of the Services Agreement, the Debtor is entitled to repossess or remove the Proton Equipment and other personal property located at the Facility without Scripps having any additional right or claim for damages under 11 U.S.C. § 365(h) for such actions.

102.    Accordingly, the Debtor is entitled to a declaratory judgment under Count 3 that 11 U.S.C. § 365(h)(1)(A) does not apply to the Proton Equipment or any of the Debtor's other personal property located at the Facility in the event that the Debtor rejects the Services Agreement as part of the underlying Chapter 11 Case.    The Debtor is also entitled to a declaratory judgment that, upon any rejection of the Services Agreement, it is entitled to repossess or remove the Proton Equipment and other personal property located at the Facility without Scripps having any additional rights or claim for damages under 11 U.S.C. § 365(h) for such actions.

**COUNT 4 – *Declaratory Relief – A ▮▮▮▮▮▮▮▮▮▮ has Occurred Under the Services Agreement and the Debtor is ▮▮▮▮▮▮▮▮***

103.    The Debtor repeats and realleges the allegations contained in Paragraphs 1–102 of this Complaint as if fully set forth herein.

104.    In addition to the allegations set forth in Counts 1–3, there has been an uncured "▮▮▮▮▮▮▮▮▮" under ▮▮▮▮▮▮ of the Services Agreement, which ▮▮▮▮▮▮ ▮▮▮ entitles the Debtor to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮. The Debtor therefore requests that this Court declare that the Services Agreement is

57870866.1

subject to termination, so that the scope of the property in the Debtor's bankruptcy estate may be appropriately determined.

105. Under ███████ of the Services Agreement, a ██████████████ is defined as ███████████████████████████████████ Ex. A at Article I, p.9.

106. An uncured ████████████████████ has occurred under the Services Agreement.

107. ██████████ of the Services Agreement, titled "████████████████████████" provides that:



Ex. A at ¶ 25.1.

108. The Services Agreement provides that the "████████████" is defined in ██████ ████████████████. Ex. A at Article I, p.2.

109. ██████████ provides for Scripps to ████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ████████████████. Ex. A at § 24.2.

110. The Debtor and Scripps further agreed that ████████████████████████ ███████████████████████████████████████████ ██████████. Ex. A at § 24.3.4. A copy of the ████████████████████ is attached as **Exhibit E**, and incorporated by reference.

22

111.    The Services Agreement sets forth a process by which the parties can propose changes to an applicable ████████. *See* Ex. A at § 24.4.

112.    However, the Multi-Party Agreement ████████ by expressly ████████████████████████████████████. The Multi-Party Agreement provides, in pertinent part, that ████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████ Ex. D at § 14.

113.    In the event the Lenders fail to ████████████████ ████████████████████████████, Scripps has the rights (i) ████████████ (ii) ████████████████████ ████████████ and, under certain circumstances, (iii) ████████████████. *See* Ex. A at § 24.4.2; Ex. D at § 14.  Scripps does *not* have the right, in this circumstance, to force ████████████████████████. *Id.*

114.    The Multi-Party Agreement further acknowledges that the ████████████ ████████████████████, and the Lenders ████████████ ████████████████. Ex. D at § 14.

115.    While Scripps has, on several occasions, proposed amendments and modifications to the ████████, including proposing ████████████████████ ████, none of those amendments and modifications or proposed new ████████ has been appropriate or acceptable from the Lenders' perspective.  Accordingly, the Lenders did not consent to an amendment of the ████████████, which renders any purported amendments

or proposed ████████████████████████ of the Multi-Party Agreement.  Thus, pursuant to the terms of both the Services Agreement and the Multi-Party Agreement, the ████ ██████████ is and always has been the ██████████████████████████.

116.    The ██████████████ therefore is, and at all relevant times has been, the governing ████████████ under the Services Agreement and Multi-Party Agreement.

117.    The year 2015 was a "█████████████████████████████████████████████" because the first ██████████ of the Services Agreement was 2014.    During 2015, the Facility failed to generate ████████████████████████████████████ as set forth in the ██████████████, which was the governing ████████████████████████████.

118.    No ██████████████ occurred during the year 2015 (or ever).

119.    Based on financial information delivered by Scripps to the Debtor, the Debtor has determined and confirmed the existence of a ██████████████████ for the year 2015.

120.    Scripps failed to cure the ██████████████████████ by the end of the ██████████████, 2016, in accordance with ████████████ of the Services Agreement, and Scripps has not taken appropriate steps to remedy the ██████████████████████.

121.    The Debtor has the right to ██████████ the Services Agreement under ████████████ due to the uncured ██████████████████████, and hereby gives notice of its intention to terminate the Services Agreement, with such termination to take effect upon completion of a transition plan that assures continuity of patient care.

122.    Accordingly, the Debtor is entitled to a declaratory judgment under Count 4 that a ██████████████████████ occurred for the year 2015, that Scripps failed to cure the ██████████████████████ in 2016, and that the Debtor has the right to terminate the

Services Agreement, with such termination to take effect upon completion of a transition plan that assures continuity of patient care.

## VI.
## ATTORNEYS' FEES

123.    Pursuant to ████████ of the Services Agreement, the Debtor is entitled to

████████████████████████████████████████████████████████████████

████████████████████. *See* Ex. A at § 27.15.  The Debtor requests that Scripps be ordered to make payment of these amounts.

## VII.
## PRAYER

WHEREFORE, the Debtor demands judgment against Scripps and requests the Court grant the following relief:

a.    Entering a declaratory judgment that Scripps does not have either a property interest in the Facility within the meaning of 11 U.S.C. § 363(e) and (f), or a leasehold interest in the Facility within the meaning of 11 U.S.C. § 365(h);

b.    Entering a declaratory judgment that the Purported Transfer Restrictions are unenforceable;

c.    Entering a declaratory judgment that, in the event that the Debtor rejects any or all of the Services Agreement, the Ground Lease, and the Ground Sublease, Scripps is not entitled to any of the rights and remedies provided in 11 U.S.C. § 365(h), and has no interest in the Facility;

d.    Entering a declaratory judgment that, in the event the Debtor rejects any or all of Services Agreement, the Ground Lease, and the Ground Sublease, the appurtenant rights described in 11 U.S.C. § 365(h)(1)(A)(ii) do not attach to the Proton Equipment and any of the Debtor's other personal property located at the Facility and other real property subject to the Services Agreement;

e.    Entering a declaratory judgment that a ████████████████████ has occurred under the Services Agreement, and the Debtor is entitled to terminate the Services Agreement because this ████████████ has not been cured;

f.    Entering a declaratory judgment that the Services Agreement is terminated, with such termination to become effective upon the completion of a transition plan that assures continuity of patient care;

g.      Ordering Scripps to surrender possession of the Facility immediately upon the termination of the Services Agreement becoming effective, consistent with the completion of a transition plan that assures continuity of patient care;

h.      Approving the Debtor's recovery of reasonable and necessary attorneys' fees; and

i.      Granting such other and further relief that the Debtor is entitled to and that the Court deems just and proper under the circumstances.

57870866.1

Dated:  March 21, 2017
       Wilmington, Delaware

Christopher A. Ward (Del. Bar No. 3877)
Justin K. Edelson (Del. Bar No. 5002)
POLSINELLI PC
222 Delaware Ave., Ste. 1101
Wilmington, DE 19801
Telephone: (302) 252-0922
Fax: (302) 252-0921
Email:        cward@polsinelli.com
                 jedelson@polsinelli.com

- and -

David W. Wirt (*admitted pro hac vice*)
Jonathan W. Young (*admitted pro hac vice*)
Aaron C. Smith (*admitted pro hac vice*)
Phillip W. Nelson (*admitted pro hac vice*)
Brian A. Raynor (*admitted pro hac vice*)
LOCKE LORD LLP
111 S. Wacker Drive
Chicago, Illinois  60606-4410
Telephone: (312) 443-0700
Fax: (312) 443-0336
Email:        dwirt@lockelord.com
                 jonathan.young@lockelord.com
                 asmith@lockelord.com
                 phillip.nelson@lockelord.com
                 braynor@lockelord.com

- and -

David L. Swanson *(admitted pro hac vice)*
LOCKE LORD LLP
2200 Ross Ave., Ste. 2800
Dallas, Texas
Telephone: (214) 740-8000
Fax: (214) 740-8800
Email:        dswanson@lockelord.com

*Counsel to the Plaintiff/Debtor*

27